# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| George Lee Marshall,<br><br>　　　　Plaintiff<br><br>v.<br><br>LT Maxfield, et al.,<br><br>　　　　Defendants | Case No.: 2:20-cv-00137-JAD-VCF<br><br>**Order Screening Complaint,<br>Dismissing Some Claims, and Granting<br>Limited Leave to Amend** |

Plaintiff George Lee Marshall brings this civil-rights action under 42 U.S.C. § 1983, claiming that his First, Eighth, and Fourteenth Amendment rights, as well as his rights under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") were violated during his incarceration at High Desert State Prison. Because Marshall applies to proceed *in forma pauperis*,[1] I screen his complaint under 28 U.S.C. § 1915A. I find that he has pled an Eighth Amendment claim and one colorable claim under the First Amendment and RLUIPA. But he has not pled a claim under the Fourteenth Amendment, and his other claims under the First Amendment and RLUIPA are not colorable. So I dismiss those claims without prejudice and with leave to amend by July 1, 2021.

---

[1] ECF No. 4.

**Background**

**A.    Plaintiff's factual allegations**[2]

In December 2012, Marshall was an inmate at Nevada's High Desert State Prison.[3] He alleges that on December 16, 2012, he cracked a tooth and submitted a sick call request to see a dentist. Three days later, Marshall saw a dentist as part of the intake process. The dentist noticed the crack in Marshall's tooth, but did not provide any treatment. The next day, defendant CB responded to Marshall's request for dental treatment by stating that his name was on the list and that Marshall would see the dentist when his name came up.

On January 20, 2013, Marshall submitted another request for dental treatment, and CB again responded that he would be seen when his name came up.[4] CB is a dental assistant responsible for scheduling dental appointments, and defendant Adams is responsible for overseeing the dental assistants. Marshall was eventually seen on February 15, 2013, 61 days after his initial request. As a result of the delay, Marshall suffered from extreme pain from his cracked and infected tooth, as well as blood seeping from his gums, swelling, and difficulty sleeping.

On March 18, 2012, Marshall filed a grievance against an officer for routinely starting unit tier time late.[5] On March 20, 2012, Marshall's cell was searched, and officer Flores filed a false notice of charges against Marshall due to Marshall's grievance against another officer. The false charges alleged that Marshall had placed a Chapstick cap in the track of his door to prevent

---

[2] These facts are merely a summary of the plaintiff's allegations and are not intended as findings of fact.
[3] ECF No. 1-1 at 5.
[4] *Id.* at 6.
[5] *Id.* at 7.

2

it from locking properly.[6] Defendant Maxfield conducted Marshall's disciplinary hearing, and he refused Marshall's request to call witnesses or hear any evidence beyond officer Flores's false disciplinary report. Maxfield found Marshall guilty, and, as a result, Marshall lost numerous privileges, like the ability to attend vocational programs, engage in sports, and earn credits towards his parole-eligibility date.[7]

Marshall is a member of the Moorish Science Temple of America, which was founded in 1920.[8] The Moorish Science Temple of America observes Islamic law and follows the teachings of the Qur'an and Circum 7. In August 2013, Marshall was transferred to Southern Desert Correctional Center.[9] Marshall submitted a request to defendant Youngblood, the chaplain, to be placed on a Halal/Kosher diet. Youngblood approved the request, and Marshall was approved for the "common fare diet." However, Marshall found that the diet did not satisfy his understanding of Halal requirements. So Marshall felt that he was forced to choose between eating food that did not conform with his religious beliefs or going hungry.

From April 18 to June 9, 2014, Youngblood would come to the chapel on Friday mornings to hold a Christian service.[10] But Youngblood would then leave, which meant that Islamic Jumah services could not be held, and Muslims did not have access to the chapel.

On June 14, 2014, Marshall filed a request to receive special meals for Ramadan, which was starting on June 29, 2014.[11] On June 28, 2014, Marshall found out that his name was not on

---

[6] *Id.* at 8.
[7] *Id.* at 8–9.
[8] *Id.* at 3.
[9] *Id.* at 9.
[10] *Id.* at 10.
[11] *Id.* at 12.

3

the Ramadan list, and he placed a kite in the chaplain box. On July 1, 2014, Marshall spoke to Youngblood about the issue, and Youngblood stated that he received Marshall's request and forwarded it to the warden. Two days later, Youngblood told Marshall that he had not been placed on the Ramadan list because Youngblood had not received a request from Marshall to be placed on the Ramadan meal list.

**B.      Plaintiff's causes of action**

Based on these events, Marshall sues defendants Maxfield, CB, Adams, and Youngblood and alleges an Eighth Amendment violation for deliberate indifference to his serious dental needs, a Fourteenth Amendment violation based on his disciplinary hearing, and three violations of the First Amendment's Free Exercise Clause and The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA). He seeks damages.[12]

I note that Marshall titles each of his constitutional claims as a violation of the state and federal constitution. For example, Marshall titles his claim based on the delay in dental care as a "violation of the 8th Amendment to the State and Federal Constitution." However, the Nevada State Constitution does not have amendments like the United States Constitution does. Because Nevada's Constitution does not have a First, Eighth, or Fourteenth Amendment, Marshall cannot bring any claims under those non-existent amendments. I therefore dismiss Marshall's claims under the Nevada Constitution with prejudice, as amendment would be futile.

. . .

. . .

. . .

---

[12] *Id.* at 16.

4

**Discussion**

**A.     Screening standard**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity.[13] In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief.[14] All or part of the complaint may be dismissed *sua sponte* if the prisoner's claims lack an arguable basis in law or fact. This includes claims based on legal conclusions that are untenable, like claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist, as well as claims based on fanciful factual allegations or fantastic or delusional scenarios.[15]

Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief.[16] In making this determination, the court takes all allegations of material fact as true and construes them in the light most favorable to the plaintiff.[17] Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers,[18] but a plaintiff must provide more

---

[13] *See* 28 U.S.C. § 1915A(a).

[14] *See* 28 U.S.C. § 1915A(b)(1)(2).

[15] *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

[16] *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

[17] *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

[18] *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (recognizing that pro se pleadings must be liberally construed).

than mere labels and conclusions.[19] "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations."[20] "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[21]

**B.  Analysis of claims**

   ***1.  Plaintiff states a colorable Eighth Amendment claim against CB.***

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'"[22]  A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate.[23]  "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference."[24]

To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain."[25]  To satisfy the deliberate-indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible

---

[19] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).
[21] *Id*.
[22] *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).
[23] *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).
[24] *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).
[25] *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted).

6

medical need and (b) harm caused by the indifference."[26] "Indifference may appear when prison officials deny, delay[,] or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." When a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury.[27] Prisoners can establish an Eighth Amendment violation with respect to dental care if they can prove that there has been a deliberate indifference to their serious dental needs.[28]

I find that Marshall states a colorable claim of deliberate indifference to a serious medical need against defendant CB. I liberally construe the complaint as alleging that Marshall informed CB that he was in terrible pain and needed to see a dentist. CB failed to ensure that Marshall received timely medical care. As a result, Marshall continued to suffer in extreme pain for 61 days. These allegations are sufficient to state a colorable claim on screening.

But Marshall fails to state a colorable claim against defendant Adams. Marshall alleges that Adams was a supervisor, but a defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal participation by the defendant."[29] "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§]1983."[30] "Supervisory liability exists even without overt personal

---

[26] *Id.* (internal quotations omitted).

[27] *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

[28] *See Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989).

[29] *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

[30] *Id.*; *see also Ashcroft*, 556 U.S. at 676 (holding that "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

7

participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"[31]  Marshall does not allege that Adams was aware of Marshall's dental needs and failed to intervene.  Nor does Marshall allege that Adams implemented a policy that was so deficient that the policy constituted a repudiation of constitutional rights.  Marshall therefore fails to state a colorable claim against Adams, and I dismiss Adams from the entirety of this case without prejudice.

        2.       ***Plaintiff fails to state a colorable due-process claim.***

In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.[32]  In *Sandin v. Conner*, the United States Supreme Court held that a prisoner has a liberty interest when confinement "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[33]  The Court focused on three factors in determining that the plaintiff possessed no liberty interest in avoiding disciplinary segregation: (1) disciplinary segregation was essentially the same as discretionary forms of segregation; (2) a comparison between the plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no "major disruption in his environment;" and (3) the length of the plaintiff's sentence was not affected.[34]

---

[31] *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).
[32] *Sandin v. Conner*, 515 U.S. 472, 487 (1995).
[33] *Id*. at 484.
[34] *Id*. at 486–87.

8

Using the *Sandin* factors as guideposts, I find that Marshall fails to state a colorable due-process claim. Marshall alleges that because he was found guilty of a violation, his classification level was reduced and he lost several privileges like the ability to attend vocational programs and engage in sports. But inmates do not have a liberty interest in their classification status, prison employment, or prison programs.[35] Marshall also alleges that he lost the opportunity to earn good-time credits towards his parole eligibility. But in Nevada, state prisoners do not have a liberty interest in parole or parole eligibility.[36] The allegations in the complaint do not establish the existence of a liberty interest and thus fail to state a colorable due-process claim. So I dismiss Marshall's due-process claim without prejudice and with leave to amend. Because this the only claim pled against defendant Maxfield, I dismiss Maxfield from the entirety of the case without prejudice.

### 3. *Plaintiff's First Amendment and RLUIPA claims*

The First Amendment to the United States Constitution provides that Congress shall make no law respecting the establishment of religion or prohibiting the free exercise thereof.[37] The United States Supreme Court has held that inmates retain protections afforded by the First Amendment "including its directive that no law shall prohibit the free exercise of religion."[38]

---

[35] *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (holding that prisoners have no liberty interest in their classification status); *see Collins v. Palczewski*, 841 F. Supp. 333, 336, 340 (D. Nev. 1993) (finding that neither the U.S. Constitution, Nevada statutory law, nor the state's prison administrative regulations create a protected liberty or property interest in prison employment); *Brown v. Sumner*, 701 F. Supp. 762, 764 (D. Nev. 1988) (finding that "[i]n general, prisoners have no fourteenth amendment due process rights to participate in a work, educational, or vocational training program").

[36] *See Moor v. Palmer*, 603 F.3d 658, 661–62 (9th Cir. 2010); *Fernandez v. Nevada*, No. 3:06-CV-00628-LRH-RAM, 2009 WL 700662, at *10 (D. Nev. Mar. 13, 2009).

[37] U.S. Const. amend. I.

[38] *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).

"In general, a plaintiff will have stated a free exercise claim if: (1) 'the claimant's proffered belief [is] sincerely held; and (2) 'the claim [is] rooted in religious belief, not in purely secular philosophical concerns.'"[39] The Supreme Court has recognized that an inmate's "limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security."[40] During summary judgment, courts evaluate prison regulations alleged to infringe on constitutional rights under the "reasonableness" test set forth in *Turner v. Safley*.[41]

RLUIPA provides that the government must not "impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless [it] demonstrates that imposition of the burden on that person" satisfies two elements.[42] Imposing the burden on the person must be (1) "in furtherance of a compelling governmental interest" and (2) "the least restrictive means of furthering that compelling governmental interest."[43] "Claims brought under RLUIPA are subject to a strict scrutiny standard, which replaces the reasonableness standard employed in cases involving constitutional violations."[44]

RLUIPA broadly defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."[45] "RLUIPA is to be construed broadly

---

[39] *Walker v. Beard*, 789 F.3d 1125, 1138 (9th Cir. 2015).

[40] *Id*.

[41] *Shabazz*, 482 U.S. at 349 (citing *Turner v. Safley*, 482 U.S. 78, 89–91 (1987)); *see Hrdlicka v. Reniff*, 631 F.3d 1044, 1046–50 (9th Cir. 2011) (analyzing the *Turner* factors applied during summary judgment on appeal).

[42] 42 U.S.C. § 2000cc-1(a).

[43] *Id.* at § 2000cc-1(a)(1)-(2).

[44] *Shilling v. Crawford*, 536 F. Supp. 2d 1227, 1232 (D. Nev. 2008).

[45] 42 U.S.C.A. § 2000cc-5(7)(A).

10

in favor of protecting an inmate's right to exercise his religious beliefs."[46] The plaintiff bears the burden of demonstrating a prima facie claim that the prison's policies or actions constitute a substantial burden on the exercise of his religious beliefs.[47]

### a. *Lack of a proper Halal diet*

I find that Marshall fails to state a colorable claim that his diet did not meet his religious requirements. Based on the allegations in the complaint, Marshall asked to be placed on a Halal/Kosher diet, and he was placed on the common fare diet that is provided to Jewish and Islamic inmates. Marshall alleges that the diet did not meet his religious needs as a member of the Moorish Science Temple of America. But Marshall does not allege that he ever informed defendant Youngblood or anyone else of that fact. Marshall also does not allege that he ever requested a change in diet. Based on the allegations in the complaint, Youngblood accommodated Marshall's request for a religious diet, and Marshall never requested any further accommodation. So the complaint fails to state a colorable claim that Youngblood violated Marshall's rights under the First Amendment or RLUIPA by failing to accommodate Marshall's religious needs. I dismiss this claim without prejudice and with leave to amend.

### b. *Lack of Jumah services*

I find that Marshall states colorable free-exercise and RLUIPA claims based on the lack of Jumah services from April 18 to June 9, 2014. I liberally construe the complaint as alleging Friday Jumah services are an integral part of Marshall's religious beliefs. On the dates alleged, Youngblood held weekly Christian services but he canceled all Islamic Jumah services. These

---

[46] *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) (citing 42 U.S.C.A. § 2000cc-3(g)).

[47] *Id*. at 994.

11

allegations are enough to state a colorable claim on screening. This claim will proceed against defendant Youngblood.

### c. *Delay in being placed on Ramadan meal list*

I find that Marshall fails to state a colorable claim based on the delay in being placed on the Ramadan meal. Marshall alleges that he placed a timely request to be put on the Ramadan meal request, but Youngblood told Marshall that Youngblood had never received the request. On June 28, 2014, Marshall placed an inmate kite in the chaplain box, and on July 1, 2014, three days later, he spoke to Youngblood in person. That same day Marshall was placed on the Ramadan meal list. Marshall does not appear to allege that Youngblood lied about not receiving the initial request to be placed on the Ramadan meal list or that Youngblood otherwise intentionally delayed Marshall being on the Ramadan meal list. Based on the allegations in the complaint, it appears that as soon as Youngblood was made aware of Marshall's request to be placed on the Ramadan meal list, Marshall was placed on it. Based on these allegations, the complaint fails to state a colorable claim that Youngblood violated Marshall's rights under the First Amendment or RLUIPA. I dismiss this claim without prejudice and with leave to amend.

## C. Leave to amend

Marshall is given leave to file an amended complaint to state a supervisory liability claim against Adams, Fourteenth Amendment due process claims, and claims regarding his Halal and Ramadan diets. If Marshall chooses to file an amended complaint, he is advised that an amended complaint replaces the original complaint, so the amended complaint must be complete in itself.[48] He must file the amended complaint on this court's approved prisoner-civil-rights form,

---

[48] *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original"); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896,

12

and it must be entitled "First Amended Complaint." Marshall must follow the instructions on the form. He need not and should not allege very many facts in the "nature of the case" section of the form. Rather, in each count, he should allege <u>facts</u> sufficient to show what <u>each</u> defendant did to violate his civil rights. **He must file the amended complaint by July 1, 2021.**

**Conclusion**

IT IS THEREFORE ORDERED that the Clerk of the Court is directed to **FILE** the complaint (ECF No. 1).

IT IS FURTHER ORDERED that:

- Plaintiff's supervisory-liability claim against Adams, Fourteenth Amendment due-process claim against Maxfield, RLUIPA and First Amendment free-exercise claims based on his halal diet, and RLUIPA and First Amendment free-exercise claims based on his Ramadan diet are DISMISSED without prejudice and with leave to amend by July 1, 2021;

- Plaintiff's Eighth Amendment claim against CB based on the delay in dental care and RLUIPA and First Amendment free-exercise claims based on the lack of Jumah services MAY PROCEED.

IT IS FURTHER ORDERED that **the Clerk of the Court is directed to SEND** plaintiff the approved form for filing a § 1983 prisoner complaint, instructions for the same, and a copy of his original complaint (ECF No. 1-1). If plaintiff chooses to file an amended complaint, he must use the approved form and he must write the words "First Amended" above the words "Civil Rights Complaint" in the caption. The amended complaint will be screened in a separate

---

928 (9th Cir. 2012) (holding that for claims dismissed with prejudice, a plaintiff is not required to reallege such claims in a subsequent amended complaint to preserve them for appeal).

screening order, and **the screening process will take <u>many months</u>.** If plaintiff does not file an amended complaint by July 1, 2021, this action will proceed immediately on his Eighth Amendment claim against CB based on the delay in dental care and plaintiff's RLUIPA and First Amendment free exercise claims based on the lack of Jumah services only.

_____
U.S. District Judge Jennifer A. Dorsey
June 1, 2021